RECEIVED

JAN 1 9 2022

AT 8:30 3:54 PM
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 22- 35 (RBK) |
| | : | |
| v. | : | |
| | : | 18 U.S.C. §§ 1349, 1347, 1001, |
| KAIVAL PATEL and | : | 1956(h), 1957, and 2 |
| SAURABH PATEL | : | |
| | : | |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting in Camden, charges:

## COUNT 1
## (Conspiracy to Commit Health Care Fraud and Wire Fraud)

1.    At all times relevant to this Indictment:

a.    Defendant KAIVAL PATEL was a resident of New Jersey.

b.    Individual 1 was the spouse of defendant KAIVAL PATEL and a resident of New Jersey.

c.    ABC Healthy Living LLC ("ABC") was a New Jersey limited liability company.  Defendant KAIVAL PATEL was precluded by his employer from engaging in certain outside business activities.  Therefore, Individual 1 formed ABC in her name to conceal defendant KAIVAL PATEL's efforts to sell medical products and services, including compound medications, in violation of his employment obligations.  Individual 1 listed herself on formation and account documents as the owner and sole member of ABC, but defendant KAIVAL PATEL managed and

1

controlled ABC. Payments received by ABC were transferred from its company bank account to the joint personal account of defendant KAIVAL PATEL and Individual 1.

d.    Defendant SAURABH PATEL was a medical doctor in the State of New Jersey.

e.    Medical Practice 1 was a medical practice located in Newark, New Jersey that was owned and operated by defendant SAURABH PATEL.

f.    Paul Camarda, who is named as a co-conspirator but not as a defendant herein, was a pharmaceutical sales representative.

g.    Dynasty Capital LLC was a New Jersey limited liability company owned and controlled by Paul Camarda, which he created for the purpose of marketing medical products and services, including compound prescription medications.

2.    At all times relevant to this Indictment:

a.    In New Jersey, the Bergen County Prescription Benefits Plan ("BCPBP"), the State Health Benefits Program ("SHBP"), and the School Employees' Health Benefits Program ("SEHBP") each offered medical and prescription drug coverage to qualified state and local government public employees and eligible dependents. BCPBP, SHBP, and SEHBP were all "health care benefit programs" that affected commerce as defined in 18 U.S.C. § 24(b).

b.    Pharmacy Benefits Administrator provided pharmacy benefit management services for BCPBP, SHBP, and SEHBP beneficiaries pursuant to agreements with insurance plans. Pharmacy Benefits Administrator also provided

pharmacy benefit management services for beneficiaries of other insurance plans. Pharmacy Benefits Administrator adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims. Pharmacy Benefits Administrator then billed the insurance plans based on the amount paid to the pharmacies for claims on behalf of BCPBP, SHBP, and SEHBP beneficiaries. Pharmacy Benefits Administrator was a "health care benefit program" that affected commerce as defined in 18 U.S.C. § 24(b).

      c.     In general, compounding was a practice in which a licensed pharmacist combined, mixed, or altered ingredients of one or more drugs in response to a prescription to create a medication tailored to the medical needs of an individual patient. Compounded drugs were not approved by the United States Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

      d.     Compounded drugs could be appropriately prescribed by a physician when an FDA-approved medication did not meet the health needs of a particular patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the ingredient that triggers the allergic reaction.

      e.     Compounding Pharmacy 1 and Compounding Pharmacy 2 were out-of-state pharmacies that prepared compound and non-compound medications. Compounding Pharmacy 3 and Compounding Pharmacy 4 were pharmacies located within New Jersey that prepared compound and non-compound medications.

Compounding Pharmacy 1, Compounding Pharmacy 2, Compounding Pharmacy 3, and Compounding Pharmacy 4 (collectively hereinafter "the Compounding Pharmacies") received prescriptions for medications from medical practices in New Jersey, including Medical Practice 1. The Compounding Pharmacies would fill prescriptions by preparing the medications and then would mail or hand deliver them to individuals. The Compounding Pharmacies then billed Pharmacy Benefits Administrator for the prescriptions and received payment from Pharmacy Benefits Administrator.

3. From in or about June 2015 through in or about May 2017, in the District of New Jersey, and elsewhere, defendants

KAIVAL PATEL and
SAURABH PATEL

did knowingly and intentionally conspire and agree with Paul Camarda and others to commit certain offenses, namely:

a.    To knowingly and willfully to execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347; and

b.    To devise a scheme and artifice to defraud, and to obtain money and property by means of materially false pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343.

4

## Object of the Conspiracy

4.      It was the object of the conspiracy for defendant KAIVAL PATEL,
defendant SAURABH PATEL, Paul Camarda, and others to unlawfully enrich
themselves by: (1) causing the submission of false and fraudulent insurance claims
for prescription medications to Pharmacy Benefits Administrator, which enabled
defendant KAIVAL PATEL, Paul Camarda, and others to receive a percentage of the
money that Pharmacy Benefits Administrator paid to the Compounding Pharmacies
for the prescription medications, and (2) steering individuals recruited to receive
medications from the Compounding Pharmacies to defendant SAURABH PATEL's
medical practice, Medical Practice 1, which enabled him to receive insurance
payments for those patient visits and procedures.

## Manner and Means of the Conspiracy

5.      It was part of the conspiracy that defendant KAIVAL PATEL, defendant
SAURABH PATEL, Paul Camarda, and others learned that Pharmacy Benefits
Administrator would reimburse up to thousands of dollars for one individual's one-
month supply of certain compounded and non-compounded prescription medications,
including vitamin combinations, scar creams, pain creams, anti-fungal gels, migraine
medications, libido creams, and acid-reflux medications.

6.      It was further part of the conspiracy that Paul Camarda and others
recruited individuals who had insurance plans that covered the expensive
prescription medications and who had prescription drug benefits administered by

Pharmacy Benefits Administrator to receive and recruit others to receive the prescription medications (hereinafter, "the Recruits").

7. It was further part of the conspiracy that Paul Camarda, through Dynasty Capital LLC, received payments, directly or indirectly, from the Compounding Pharmacies, which represented a percentage of the amounts paid for those medications by Pharmacy Benefits Administrator.

8. It was further part of the conspiracy that Paul Camarda, through Dynasty Capital LLC, paid the Recruits for the medications they agreed to receive and for recruiting other beneficiaries to receive the medications.

9. It was further part of the conspiracy that defendant KAIVAL PATEL, Individual 1, and Paul Camarda had an agreement under which Camarda paid defendant KAIVAL PATEL and Individual 1, through ABC, a percentage of the amounts received from the Compounding Pharmacies for the prescription medications that were covered by Pharmacy Benefits Administrator.

10. It was further part of the conspiracy that, in addition receiving payments from Paul Camarda, defendant KAIVAL PATEL and Individual 1 also entered into a separate agreement with Compounding Pharmacy 4 in which ABC received a percentage of the amounts paid by Pharmacy Benefits Administrator for prescription medications associated with defendant KAIVAL PATEL, Individual 1, and/or ABC.

11. It was further part of the conspiracy that, in addition to receiving payments from Paul Camarda and Compounding Pharmacy 4, defendant KAIVAL

PATEL and Individual 1 also entered into a separate agreement with Compounding Pharmacy 2 without Camarda's knowledge in which ABC received a percentage of the amounts paid by Pharmacy Benefits Administrator for prescription medications associated with defendant KAIVAL PATEL, Individual 1, and/or ABC.

12.    It was further part of the conspiracy that defendant KAIVAL PATEL and Paul Camarda approached defendant KAIVAL PATEL's relative—defendant SAURABH PATEL—about signing prescriptions for the medications and defendant SAURABH PATEL agreed to sign the prescriptions.

13.    It was further part of the conspiracy that Paul Camarda instructed the Recruits—directly or through other Recruits—to go see defendant SAURABH PATEL at Medical Practice 1 for the purpose of obtaining his authorization for the prescriptions.

14.    It was further part of the conspiracy that the Recruits did not have a prior doctor-patient relationship with defendant SAURABH PATEL and most did not return to Medical Practice 1 after seeing him to obtain his authorization for the prescriptions.

15.    It was further part of the conspiracy that Paul Camarda provided certain Recruits and defendant SAURABH PATEL with pre-printed prescription forms for the prescription medications.

16.    It was further part of the conspiracy that defendant KAIVAL PATEL and Paul Camarda would notify defendant SAURABH PATEL in advance of Recruits coming to Medical Practice 1 for the purpose of obtaining the prescriptions.

17.     It was further part of the conspiracy that the Recruits often went to see defendant SAURABH PATEL at Medical Practice 1 on the same day or within days of each other, often received prescriptions for the same medications on the same day or within days of each other, and often received prescriptions authorized by defendant SAURABH PATEL for multiple medications at once.

18.     It was further part of the conspiracy that, to avoid detection and give the appearance that the office visits and prescriptions were legitimate, defendant SAURABH PATEL: (a) often listed ailments and medical issues in the Recruits' medical charts that they did not have, and (b) often listed the same ailment, medical issue, or justification for the medication in multiple Recruits' charts on the same day or within days of each other.

19.     It was further part of the conspiracy that, in addition to the Recruits referred to Medical Practice 1 by Paul Camarda, defendant SAURABH PATEL also signed prescriptions attributed to ABC's sales identification numbers for established patients of Medical Practice 1 who had insurance that would cover the medications.

20.     It was further part of the conspiracy that, in exchange for defendant SAURABH PATEL's agreement to sign the prescriptions, Paul Camarda referred, directly or indirectly, more than 10 Recruits to Medical Practice 1.

21.     It was further part of the conspiracy that defendant SAURABH PATEL would bill insurance plans and receive payments for seeing the Recruits referred to Medical Practice 1.  Defendant SAURABH PATEL received money from insurance

companies for patient visits and procedures for the Recruits referred to Medical Practice 1 as part of the scheme.

22.     It was further part of the conspiracy that defendant KAIVAL PATEL and Paul Camarda took defendant SAURABH PATEL out for meals and entertainment events.

23.     It was further part of the conspiracy that defendant SAURABH PATEL prescribed the medications because of their high adjudication rates and because he sought to assist and financially benefit himself, defendant KAIVAL PATEL, Individual 1, and Paul Camarda, and not because the medications were medically necessary.

24.     It was further part of the conspiracy that defendant SAURABH PATEL typically selected on the pre-printed prescription forms a high number of refills for a medication for the sole purpose of maximizing profit and not because the refills were needed or requested.

25.     It was further part of the conspiracy that, after defendant SAURABH PATEL signed a prescription, he did not return the prescription to the patient to be filled at a pharmacy chosen by the patient. Instead, defendant SAURABH PATEL caused the prescriptions to be faxed to the Compounding Pharmacies, which filled the prescriptions and billed Pharmacy Benefits Administrator.

26.     It was further part of the conspiracy that when Pharmacy Benefits Administrator stopped covering particular medications or ingredients, defendant KAIVAL PATEL and Paul Camarda informed defendant SAURABH PATEL of the

change and provided him with new prescription forms or relevant information so that defendant SAURABH PATEL could authorize new prescriptions for combinations of ingredients that would be covered by insurance.

27.     It was further part of the conspiracy that defendant SAURABH PATEL, defendant KAIVAL PATEL, Paul Camarda, and others caused the payment by Pharmacy Benefits Administrator of more than $3.4 million in fraudulent claims for prescription medications.

28.     It was further part of the conspiracy that defendant KAIVAL PATEL, directly and through ABC, received over $490,000.00 for causing the submission of false and fraudulent claims for the prescription medications.

In violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5
## (Health Care Fraud)

29.     Paragraphs 1-2 and 4-28 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

30.     On or about the dates listed below, in the District of New Jersey and elsewhere, defendants

KAIVAL PATEL and
SAURABH PATEL

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of health care benefit programs, in connection with the delivery of health care benefits, items, and services:

| Count | Date | Execution |
|-------|------|-----------|
| 2 | 1-20-2017 | Defendants KAIVAL PATEL and SAURABH PATEL caused medication to be dispensed from Compounding Pharmacy 3 to Individual 2. |
| 3 | 1-27-2017 | Defendants KAIVAL PATEL and SAURABH PATEL caused a prescription for Individual 2 to be completed and faxed to Compounding Pharmacy 4. |
| 4 | 1-31-2017 | Defendants KAIVAL PATEL and SAURABH PATEL caused a prescription for Individual 3 to be completed and faxed to Compounding Pharmacy 4. |
| 5 | 2-2-2017 | Defendants KAIVAL PATEL and SAURABH PATEL caused a prescription for Individual 4 to be completed and faxed to Compounding Pharmacy 4 |

In violation of Title 18, United States Code, Section 1347, and Title 18, United States Code, Section 2.

## COUNT 6
### (False Statements)

31.     Paragraphs 1-2 and 4-28 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

32.     On or about March 18, 2021, defendant KAIVAL PATEL was interviewed by Special Agents of the Federal Bureau of Investigation ("FBI") and Internal Revenue Service – Office of Criminal Investigations ("IRS-CI").

33.     During the March 18, 2021 interview, defendant KAIVAL PATEL was advised that he needed to be truthful during the interview.

34.     During the March 18, 2021 interview, defendant KAIVAL PATEL made the following false statements and representations:

    a.     All payments made from Dynasty Capital LLC and Compounding Pharmacy 4 to ABC were "introduction fees" that were paid only because defendant KAIVAL PATEL introduced Paul Camarda to defendant SAURABH PATEL;

    b.     ABC did not sign a contract with Dynasty Capital LLC and Individual 1's signature on the contract was forged;

    c.     Defendant KAIVAL PATEL never spoke with the owner of Compounding Pharmacy 4;

    d.     ABC received approximately $195,000.00 in payments from Compounding Pharmacy 4 because Compounding Pharmacy 4 owed Paul Camarda money and paid ABC directly rather than Camarda paying ABC part of the aforementioned "introduction fee."

35.    On or about March 18, 2021, in the District of New Jersey, and elsewhere, defendant

KAIVAL PATEL

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, as set forth in paragraph 34 of this Indictment, in a matter within the jurisdiction of the executive branch of the Government of the United States, namely a criminal investigation conducted by the United States Department of Justice, FBI, and IRS-CI, knowing that such statements and representations were materially false, fictitious, and fraudulent.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 7
### (Conspiracy to Commit Money Laundering)

36.     Paragraphs 1-2 and 4-28 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

37.     From in or about July 2015 through in or about July 2017 in the District of New Jersey, and elsewhere, defendant

KAIVAL PATEL

knowing that the property involved in the financial transactions represented the proceeds of unlawful activity, namely, health care fraud and wire fraud, did knowingly conspire and agree with Paul Camarda and others to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, such property having been derived from health care fraud and wire fraud, contrary to Title 18, United States Code, Section 1957(a).

### Manner and Means of the Conspiracy

38.     It was part of the conspiracy that the Compounding Pharmacies received payments from Pharmacy Benefits Administrator for the prescription medications procured as part of the scheme.

39.     It was further part of the conspiracy that Paul Camarda received, directly or indirectly, payments from the Compounding Pharmacies, which represented proceeds of health care fraud and wire fraud.

40.     It was further part of the conspiracy that Paul Camarda, through Dynasty Capital LLC, paid defendant KAIVAL PATEL, through ABC, a portion of

the amounts received from the Compounding Pharmacies, which represented proceeds of health care fraud and wire fraud.

41.    It was further part of the conspiracy that defendant KAIVAL PATEL, through ABC, received payments from Compounding Pharmacy 2 and Compounding Pharmacy 4, which represented proceeds of health care fraud and wire fraud.

42.    It was further part of the conspiracy that defendant KAIVAL PATEL, Paul Camarda, and others engaged in transactions in amounts exceeding $10,000.00 with the proceeds of the health care fraud and wire fraud.

43.    As part of the conspiracy, defendant KAIVAL PATEL, Paul Camarda, and others caused financial transactions affecting interstate and foreign commerce to occur, as set forth below:

      a.    On or about February 3, 2017, ABC received $10,811.00 from Dynasty Capital LLC.

      b.    On or about March 20, 2017, ABC received $75,000.00 from Compounding Pharmacy 4.

      c.    On or about April 11, 2017, ABC received $60,000.00 from Compounding Pharmacy 4.

      d.    On or about April 18, 2017, ABC received $60,000.00 from Compounding Pharmacy 4.

      e.    On or about July 24, 2017, defendant KAIVAL PATEL caused the transfer of $23,000.00 from ABC to his and Individual 1's personal account.

In violation of Title 18, United States Code, Section 1956(h).

## COUNTS 8-12
### (Money Laundering – Transacting in Criminal Proceeds)

44.     Paragraphs 1-2 and 4-28 of Count 1 and paragraphs 38-43 of Count 7 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

45.     On or about the dates specified below, in the District of New Jersey, and elsewhere, defendant

### KAIVAL PATEL

did knowingly engage in the monetary transactions specified below by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, such property having been derived from health care fraud and wire fraud:

| Count | Date | Amount | Transaction |
|-------|------|--------|-------------|
| 8 | 2-3-2017 | $10,811.00 | Check from Dynasty Capital LLC to ABC |
| 9 | 3-20-2017 | $75,000.00 | Check from Compounding Pharmacy 4 to ABC |
| 10 | 4-11-2017 | $60,000.00 | Check from Compounding Pharmacy 4 to ABC |
| 11 | 4-18-2017 | $60,000.00 | Check from Compounding Pharmacy 4 to ABC |
| 12 | 7-24-2017 | $23,000.00 | Transfer from ABC to defendant KAIVAL PATEL and Individual 1's personal account |

In violation of Title 18, United States Code, Section 1957, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

### Count 1

1.     Upon conviction of the conspiracy offenses alleged in Count 1 of this Indictment, defendants KAIVAL PATEL and SAURABH PATEL shall forfeit to the United States:

      a.     Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the respective defendants obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, and all property traceable to such property; and

      b.     Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, the respective defendants obtained that constitutes or is derived from proceeds traceable to the commission of the conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, and all property traceable to such property.

### Counts 2-5

2.     Upon conviction of one or more of the health care fraud offenses alleged in Counts 2-5 of this Indictment, the defendant specified in each count shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the health care fraud offense charged in such count, and all property traceable to such property.

### Count 7

3.     Upon conviction of the money laundering conspiracy offense alleged in Count 7 of this Indictment, defendant KAIVAL PATEL shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in

such offense, and all property traceable to such property.  Such property includes, but is not limited to, all right, title, and interest of defendant KAIVAL PATEL in the property listed in the forfeiture allegation as to Count 1.

### Counts 8-12

4.    Upon conviction of one or more of the money laundering offenses alleged in Counts 8-12 of this Indictment, defendant KAIVAL PATEL shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in the money laundering offense charged in each such count, and all property traceable to such property.  Such property includes, but is not limited to, all right, title, and interest of defendant KAIVAL PATEL in the property listed in the forfeiture allegation as to Count 1.


[ REMAINDER OF PAGE INTENTIONALLY LEFT BLANK ]

## SUBSTITUTE ASSETS PROVISION
## (Applicable to All Forfeiture Allegations)

5.      If any of the above-described forfeitable property, as a result of any act

or omission of the respective defendant:

     a.      cannot be located upon the exercise of due diligence;

     b.      has been transferred or sold to, or deposited with, a third person;

     c.      has been placed beyond the jurisdiction of the Court;

     d.      has been substantially diminished in value; or

     e.      has been commingled with other property which cannot be
           subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated

by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b), to seek forfeiture of any other property

of the respective defendant up to the value of the above-described forfeitable property.

A TRUE BILL

FOREPERSON

PHILIP R. SELLINGER
United States Attorney

19

CASE NUMBER:  22-

United States District Court
District of New Jersey

## UNITED STATES OF AMERICA

v.

## KAIVAL PATEL and SAURABH PATEL

INDICTMENT FOR
18 U.S.C. §§ 1349, 1347, 1001, 1956(h), 1957, and 2

A True Bill,

Foreperson

**PHILIP R. SELLINGER**
UNITED STATES ATTORNEY
NEWARK, NEW JERSEY

**CHRISTINA O. HUD**
**R. DAVID WALK, JR.**
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026